UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FIONN BLEVIO, SINEAD BLEVIO, and        :
HENRY BLEVIO,                           :
    Plaintiffs,                         :
                                        :
v.                                      :
                                        :
SHAW'S SUPERMARKETS, INC. and           :   3:14-cv-00171-WWE
FAIRBANK RECONSTRUCTION CORP.           :
doing business as FAIRBANK FARMS, INC., :
    Defendants and                      :
    Third-Party Plaintiffs,             :
                                        :
v.                                      :
                                        :
GREATER OMAHA PACKING COMPANY,          :
INC.,                                   :
    Third-Party Defendant.              :

## MEMORANDUM OF DECISION ON THIRD-PARTY DEFENDANT'S MOTION TO DISMISS

This is an action by consumers who purchased contaminated beef from defendants. Defendants filed a third-party complaint against third-party defendant based on contractual indemnification (Count I), common law contribution and indemnity (Count II), the implied warranty of merchantability pursuant to C.G.S.A. § 42a-2-314 (Count III), and the implied warranty of fitness for a particular purpose pursuant to C.G.S.A. § 42a-2-315 (Count IV).

Third-party defendant has moved to dismiss Count I as to Shaw's, Count II as to Fairbank, and Counts III and IV as to both third-party plaintiffs. For the following reasons, third-party defendant's motion to dismiss will be denied.

### BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts allegations in the third-party complaint as true.

Plaintiffs contend that in September 2009, their minor son fell ill after consuming ground beef processed and sold by Fairbank and Shaw's. Plaintiffs assert strict liability claims against defendants.

Third-party defendant Greater Omaha Packing Company, Inc. ("GOPAC") operates a beef slaughter and fabrication establishment and supplies raw beef trim to defendant Fairbank.

On September 11, 2009, GOPAC manufactured and supplied raw beef trim containing *E. coli* to Fairbank that was later used by Fairbank to process ground beef products on September 14, 15, and 16, 2009. The adulterated raw beef trim was consumed by plaintiffs' minor son.

In October 2009, the CDC, the USDA, and various state and local public health departments began investigating a cluster of *E. coli* illnesses known as the "Northeast Outbreak."

On October 31, 2009, based upon analysis of epidemiological data collected by the CDC showing an association between *E. coli* illnesses and the consumption of ground beef, Fairbank issued a voluntary recall of 545,699 pounds of ground beef that had been processed at its Ashville, New York facility on September 14, 15, and 16, 2009.

A federal jury in the consolidated cases of <u>Long v. Fairbank Farms, et al.</u>, No. 1:09-cv-592 (D. Me.) and <u>Smith v. Fairbank Farms, et al</u>, No. 2:10-cv-60 (D. Me.) has conclusively determined, in a verdict issued on November 10, 2011, that GOPAC supplied the adulterated raw beef trim containing *E. coli* to Fairbank in September 2009. The contaminated beef was then used by Fairbank to process ground beef that sickened consumers.

On March 5, 2009, Fairbank entered into a guarantee with GOPAC which governed the sale of GOPAC raw beef trim to Fairbank. Pursuant to the guarantee, GOPAC had a duty to provide Fairbank with raw beef trim that was not adulterated or misbranded and which could be

legally introduced into interstate commerce. GOPAC further agreed to indemnify and hold Fairbank harmless from "all claims, damages, causes of actions, suits, proceedings, judgments, charges, losses, costs, liabilities and expenses (including attorneys' fees) arising from any products (raw materials) as delivered to Buyer by [GOPAC], that do not comply with the provisions of the Buyer's Raw Material Specifications or that are caused by the negligence or intentional misconduct of [GOPAC], its Agents and employees." Fairbank and GOPAC intended for the guarantee to benefit third-party retailers, including Shaw's.

Although third-party plaintiffs have demanded that GOPAC indemnify them for all attorneys' fees, costs and expenses incurred in this action, as required by the guarantee, GOPAC has refused all such demands.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**Count I: Contractual Indemnification**

GOPAC argues that Shaw's claim for contractual indemnification must fail because (1) Shaw's was not a party to the guarantee between Fairbank and GOPAC and (2) Shaw's cannot demonstrate that Fairbank and GOPAC intended Shaw's to be a third-party beneficiary.

Shaw's and Fairbank respond that Shaw's is an intended beneficiary of the guarantee because performance by GOPAC will discharge Fairbank's obligation to indemnify Shaw's, thereby satisfying the parties' intent that GOPAC indemnify Fairbank for "all claims [and] losses" caused by GOPAC's breach of its express warranty.

"The ultimate test to be applied in determining whether a person has a right of action as a third party beneficiary is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party beneficiary and that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties." Knapp v. New Haven Road Construction Co., 150 Conn. 321, 325 (1963).

Based on the language of the guarantee, the Court is skeptical that Shaw's can demonstrate that Fairbank and GOPAC intended GOPAC to assume a direct obligation to Shaw's. However, at this stage of the litigation, the Court will leave Shaw's to its proof. Accordingly, Shaw's contractual indemnification claim will not be dismissed.

**Count II: Common Law Contribution and Indemnity**

GOPAC argues that Fairbank's claim for common law contribution and indemnity should be dismissed because Fairbank cannot demonstrate that GOPAC had exclusive control over the contamination of beef that gave rise to plaintiffs' injuries.

Fairbank must show four elements to obtain indemnification under the common law from GOPAC: (1) that GOPAC was negligent; (2) that GOPAC's negligence, rather than Fairbank's, was the direct, immediate cause of plaintiffs' injuries; (3) that GOPAC was in exclusive control of the situation which gave rise to plaintiffs' injuries; and (4) that Fairbank did not know of GOPAC's negligence, had no reason to anticipate it, and could reasonably rely on GOPAC not to be negligent.  See Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694, 698 (1997).

GOPAC essentially contends that because Fairbank possessed and processed the contaminated raw beef trim it received from GOPAC, GOPAC could not have had exclusive control over the contamination.

The issue of exclusive control is a question of fact.  See Williams v. Hoffman/New Yorker, Inc., 923 F. Supp. 350, 355 (D. Conn. 1996).  Moreover, two juries have concluded that GOPAC sent contaminated trim to Fairbank and that GOPAC's contaminated trim caused the *E. coli* illnesses in three other individuals involved in the Northeast Outbreak.  Accordingly, Fairbank's claim of common law contribution and indemnity will not be dismissed.

**Counts III and IV: Implied Warranty of Merchantability pursuant to C.G.S.A. § 42a-2-314 and the Implied warranty of Fitness for a Particular Purpose pursuant to C.G.S.A. § 42a-2-315**

GOPAC argues that counts III and IV must be dismissed because neither Shaw's nor Fairbank has alleged that it suffered any past or present commercial loss; GOPAC contends that any alleged commercial loss by third-party plaintiffs is speculative future liability, contingent on plaintiffs' success in this case.

Shaw's and Fairbank respond that they have already incurred and continue to incur

5

significant costs, including attorneys' fees, related to the defense of plaintiffs' claims in this action. Moreover, whether GOPAC is liable to Shaw's and Fairbank for their costs based on statutory implied warranties is not necessarily dependent on whether plaintiffs ultimately succeed on their strict liability claim against Shaw's and Fairbank.

Commercial loss includes all economic loss, direct or consequential, and can include attorneys' fees. See Connecticut General Life Ins. Co. v. Grodsky Service, Inc., 781 F. Supp. 897, 899-901 (D. Conn. 1991); Thivierge v. Fortress Scientific Ltd., 1993 WL 213891, *9-10 (Conn. Super. Ct. June 14, 1993). Moreover, principles of judicial economy favor resolving all claims with a common factual core together. See Ives v. NMTC, Inc., 1999 WL 585814, *5 (Conn. Super Ct. July 26, 1999). Accordingly, third-party plaintiffs' claims of implied warranty of merchantability and implied fitness for a particular purpose will not be dismissed.

## CONCLUSION

For the foregoing reasons, third-party defendant's motion to dismiss is DENIED.

Dated this 10th day of November, 2014, at Bridgeport, Connecticut.


       /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE